### THE FERGUSON.

(District Court, E. D. New York. February 6, 1909.)

WHARVES (§ 22*)—INJURY TO DRY DOCK—ELEMENTS OF DAMAGES—LOSS OF USE OF DOCK.

    In computing the amount of damages recoverable from a vessel for the negligent injury of a floating dry dock, no allowance can be made for the loss of the use of the dock while being repaired, where no actual loss resulted because all work which might have been done in such dock during that time was taken care of in another owned by libelant.

    [Ed. Note.—For other cases, see Wharves, Cent. Dig. § 7; Dec. Dig. § 22.*]

In Admiralty. On exceptions to report of commissioner.

Wheeler, Cortis & Haight, for libelant.

Wing, Putnam & Burlingham, for claimant and respondent.

CHATFIELD, District Judge. The libelant herein brought an action for damages to a dry dock, caused, as he alleged, through negligent removal of a vessel from that dock, where she had been under course of repairs by the libelant. A decree in favor of the libelant was awarded by the decision of the Circuit Court of Appeals (153 Fed. 366, 82 C. C. A. 442), and a reference has been had to ascertain the amount of damage. The commissioner has assessed damages for the expense of repairing the injuries to the dock, but has refused to award damage for loss of the use of the dock in question, upon the ground that no actual loss was incurred. This fact was admitted by the libelant, and it appears that all work which would have been done in the dock in question during the time it was undergoing repairs was

taken care of in a graving or stone dock almost immediately along-side. This dock was empty at the time, and was not wanted for any purpose that was not accomplished otherwise during the period in question. Certain expense and delay was occasioned by disconnecting the injured sections of the large floating dry dock and in reconnecting and replacing those sections after repairs, and the inability to use the injured sections caused a transfer to the graving dock of all large vessels, while smaller vessels were placed during this period in the remaining sections of the floating dry dock. These expenses have been included in the award.

The libelant contends that under the doctrine of The Cayuga, 81 U. S. 270, 20 L. Ed. 828, affirming 7 Blatchf. 385, Fed. Cas. No. 2,537, and The Favorita, 85 U. S. 598, 21 L. Ed. 856, he is entitled to a reasonable amount, similar to demurrage for loss of use of a vessel, and that the fact that he had an extra dock should be considered similar to the substitution of an extra or spare ferryboat in the cases mentioned. The libelant also cites the case of The City of Birmingham, 138 Fed. 555, 71 C. C. A. 115, which by coincidence was originally before the same commissioner who has made the determination in the present case. In that case demurrage was awarded for loss of service of an injured dredge, although no attempt was made to replace the injured dredge by making use of a spare dredge, which could have been substituted if the owner of the dredges had seen fit to do so. The basis for the allowance of demurrage was held to be an estimate of the reasonable value of the use of a dredge, like the one injured, during the period of repair.

The commissioner in the present case has found that restitution ad integrum for the tort committed should be the basis of recovery, but that only actual outlay for repairs and expenses can be included; that possible profits, or supposable business which might have been done, cannot be taken into account as the basis for damage. He has distinguished between the cases of the ferryboats and dredge and that of a dry dock. This court is disposed to differ with the commissioner in his idea that there is any distinct reason why one method of computation should be used in the case of a dredge, and a different one in the case of a floating dry dock. But it is a more serious question to determine a basis of value. In the ferryboat cases it was held, and the result has been approved by the highest court, that a fair compensation for the loss of use of the particular boat should be awarded to the party injured, without specific proof of damage, and even when loss of fares has been prevented by the substitution of another boat. In some instances the charter-party value of a boat has been taken as a fair basis of compensation. In others, as in the case of the dredge, an estimate of that valuation has been made. But the cases mentioned seem to have all been decided upon the theory that if a rental or charter or actual value of a vessel, as a boat capable of use for the purposes to which it was being put, can be satisfactorily and legally estimated, then this amount will be a fair basis for computation of damage caused by the loss of use of such a boat.

It has been assumed by the libelant herein, and seems to be fre-

quently asserted, that damages under such circumstances should be allowed according to the share of the profits which that particular boat would have earned if it had been kept in service, even though the same particular profits were obtained, without appreciable loss, by the libelant through the use of a different boat, or by the use of the remaining boats without hiring any in addition.

An examination of the cases shows no basis for this contention. As has been said, restitution is the basis of allowance of damages, and in the case at bar the commissioner seems to have found and allowed every item of damage or loss of use which has been proved. The mere inconvenience of using one dock for another, or of being deprived of having two docks for use in place of one, is not shown to be ascertainable in money value. The case is not like one where damages for pain and suffering can be assessed, and the report must be confirmed. The allowance for coal will be corrected by including five days rather than one.